**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**JUNIATA PACKING COMPANY, Respondent.**

**No. 71–1649.**

United States Court of Appeals, Third Circuit.

Argued April 7, 1972.

Decided July 19, 1972.

William DuRoss, N. L. R. B., Washington, D. C., for petitioner.

Charles J. McKelvey, McNerney, Page, Vaderlin & Hall, Williamsport, Pa., for respondent.

Before HASTIE and GIBBONS, Circuit Judges, and BECKER, District Judge.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

The National Labor Relations Board is here seeking enforcement of an order entered pursuant to findings that an employer, Juniata Packing Company, had committed unfair labor practices in violation of several sections of the National Labor Relations Act, as amended. The order imposed a number of sanctions.

At the times in question an effort was being made to organize for collective bargaining a unit of some 47 employees at Juniata's slaughtering and meat processing plant. The trial examiner and the Board found violations of section 8(a) (1) or 8(a) (3) of the Act, or both, in each of several occurrences. The evidence adequately supports those findings.

■ There was credible evidence that the employer's assistant manager, whose duties involved frequent personal contact with the employees warned employees that unionization would result in the loss of their retirement fund and their Christmas bonus. On another occasion he informed an employee that before the company would recognize the union it would close up shop. Similar improper coercion is evidenced by testimony that the general manager told three employees that an impending customary annual 10 cents per hour wage increase would have to be held up in the light of the union organization activity. Also, a new employee, who, between his hiring and the time he was to begin work, had made manifest his adherence to the union, was ordered not to report to work. Clearly these, as well as other acts not specified in this opinion, were unfair la-

bor practices that were appropriately redressed by a cease and desist order.

■ The Board also held, contrary to the finding and recommendation of the trial examiner, that, after the above outlined unsuccessful efforts to defeat unionization, the employer had violated section 8(a) (5) of the Act by denying a petition to recognize the union when signed cards were presented to it showing that a substantial majority of the employees in the proposed bargaining unit wished such representation. The trial examiner justified the employer's action on the ground that the participation of a supervisor, Robert Sprankle, in the campaign to win union support was coercive interference with the freedom of employees to decide whether or not they wished union representation. However, the Board found that Sprankle's pro-union activity was neither extensive nor coercive. Our examination of the record satisfies us that this was a permissible finding. In this connection, the fact that Sprankle's pro-union position was recognized by all concerned as contrary to that of management adds to the unlikelihood that anything he said favorable to unionization would have the coercive effect that often attends an employer's efforts to discourage unionization.

■ The Board also differed with the trial examiner in its characterization of a strike that occurred while the campaign for unionization was in progress. The trial examiner viewed this work stoppage as solely an economic strike to secure union recognition. The Board found that, in part at least, the strike was an unfair labor practice strike in protest against the several violations of section 8(a) (1) and 8(a) (3) discussed above. Moreover, the unjustified refusal of the employer to recognize the adherence of a majority of the employees to the union was an additional unfair labor practice. N. L. R. B. v. Clearfield Cheese Co., 3d Cir. 1954, 213 F.2d 70. On the present record there was reasonable basis for the Board's conclusion that the strike was both a demand for union recognition and a protest against the employer's unfair labor practices. *Cf.* N. L. R. B. v. Stackpole Carbon Co., 3d Cir. 1939, 105 F.2d 167, cert. denied 308 U.S. 605, 60 S.Ct. 142, 84 L.Ed. 506; N. L. R. B. v. Fitzgerald Mills Corp., 2d Cir. 1963, 313 F.2d 260, cert. denied 375 U.S. 834, 84 S.Ct. 47, 11 L.Ed.2d 64.

This characterization of the strike has significant consequence in connection with a claimed right of strikers to reinstatement. Reasoning that this was merely an economic strike, the trial examiner ruled that strikers who had made unqualified requests for reinstatement upon termination of the strike were entitled to reinstatement only as vacancies should occur. However, the Board's permissible finding that this was an unfair labor practice strike justified its order requiring immediate reinstatement of strikers who had appropriately sought reinstatement. Mastro Plastics Corp. v. N. L. R. B., 1956, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309; International Union of Electrical etc. Workers v. N. L. R. B., 3d Cir. 1964, 328 F.2d 723.

■ The Board also rejected the trial examiner's finding that certain employees were not entitled to reinstatement because, during the strike, they joined with employee Clinton, whose reinstatement has not been required, in an act of violence. In our view the Board was justified in finding that these employees were no more than bystanders who did not incite or encourage Clinton when he physically attacked a fellow employee who had crossed the picket line. Indeed, one of the group called upon Clinton to desist. Thus these employees, other than Clinton, did not forfeit the right to reinstatement enjoyed by other strikers when the strike ended.

■ Different considerations led the Board, again disagreeing with the trial examiner, to require the reinstatement of employee Kirkpatrick. The Board found that "Kirkpatrick in a state of intoxication, went to the pickets and suggested flattening some tires. One of the pickets opposed it. Kirkpatrick then

suggested breaking a plant window which was also opposed. At this point Kirkpatrick said 'I'm going to do it anyway.' He then proceeded to the plant on his own and broke a window with a board." The Board minimized this misconduct because Kirkpatrick was intoxicated. However, the Board's own quoted finding shows that Kirkpatrick knew what he was doing, talked briefly with pickets about his contemplated destruction of property and, after being advised against it, proceeded to break a window. On these facts, we cannot agree that this was a spontaneous rather than a calculated and malicious act of vandalism. Indeed, we find no justification for treating Kirkpatrick differently from Clinton who has been denied reinstatement because he struck a fellow employee who crossed the picket line.

■■■ Finally, the employer vigorously challenges so much of the Board's prescribed remedy as requires that the employer now bargain with the union, instead of directing that the matter of representation be determined by an election. However, both parties recognize that such an order is proper if the employer's unfair labor practices "have the tendency to undermine majority strength and impede the election processes." N. L. R. B. v. Gissel Packing Co., 1969, 395 U.S. 575, 614, 89 S.Ct. 1918, 1940, 23 L.Ed.2d 547. The employer contends that the Board has failed to show any adequate basis for concluding that misconduct of the employer had any such tendency in this case. But the Board permissibly reasoned that the very nature and number of the employer's unfair labor practices were sufficient to create an unacceptable risk that any election now held would not reflect a choice made free of persisting coercive influence.

We have pointed out that in its effort to discourage unionization the employer had threatened employees with the loss of retirement fund benefits, a Christmas bonus and a routine annual wage increase, as well as the actual closing of the plant. One recent employee had been discharged for signing a card in favor of unionization. Certainly such conduct is likely to intimidate employees who otherwise would be disposed to support unionization. And in the experienced judgment of the Board there remained real danger that for a considerable time after the occurrence of this series of coercive acts their intimidating influence persisted and would not be dissipated by merely ordering the employer to cease and desist.

Except for the Board's requirement that employee Kirkpatrick be reinstated, the order of the Board will be enforced.